# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMONT ANDERSON and<br>CASSANDRA ANDERSON, h/w | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| UNITED STATES POSTAL SERVICE,<br>MEGAN J. BRENNAN, THE UNITED<br>STATES OF AMERICA, and MERIT<br>SERVICE SOLUTIONS, LLC, a/k/a<br>MERIT SERVICE SOLUTIONS | : <br> : <br> : <br> : <br> : | NO. 19-262 |

## MEMORANDUM OPINION

**Savage, J.**                                                                        **July 1, 2019**

Plaintiff Lamont Anderson brought this personal injury action under the Federal Tort Claims Act ("FTCA")[1] to recover damages he sustained when he slipped and fell on snow and ice in a parking lot of a United States post office. He sued the United States, the owner and occupant of the property, and Merit Service Solutions, LLC, ("Merit"), the contractor responsible for snow removal on the property.[2] In moving to dismiss the amended complaint for lack of subject matter jurisdiction, the federal defendants invoke the independent contractor exception to the FTCA waiver of tort immunity.

After weighing the evidence presented and evaluating the merits of the jurisdictional challenge under Rule 12(b)(1), we conclude that Merit was an independent

---

[1] *See* 28 U.S.C. §§ 1346(b), 2671-2680.

[2] In his first complaint, Lamont Anderson was the sole plaintiff. He amended the complaint to add his wife Cassandra as a plaintiff to assert a consortium claim. *See* Am. Compl. (Doc. No. 10) ¶¶ 22-26. Because she had failed to exhaust her administrative remedies, Cassandra Anderson withdrew her consortium claim against the federal defendants. Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss (Doc. No. 19) at ECF 3, 10. However, she is not withdrawing her consortium claim against Merit. *Id.*

Anderson also named as federal defendants the United States Postal Service and Megan J. Brennan. The only proper federal defendant is the United States.

contractor with broad responsibilities for snow removal, including day-to-day management, supervision and control over the work. Therefore, we shall grant the federal defendants' motion and dismiss the amended complaint as to those defendants.

**Background**

According to the amended complaint, on March 15, 2017, plaintiff Lamont Anderson ("Anderson") was walking in the parking lot of the Hunting Park post office in Philadelphia, when he slipped and fell on snow and ice. He alleges that the area where he fell was not properly shoveled or salted, causing him to fall and injure his wrist, back and ankle. He claims that the defendants were negligent in failing to properly "place salt for snow and ice and/or satisfactorily remove snow and ice" at the post office; to properly inspect and maintain the premises; and to properly hire, supervise and instruct their employees on the maintenance of the premises.[3]

At the time Anderson fell, the United States Postal Service ("Postal Service") contracted with Merit to provide snow and ice removal services to multiple post office branches in the Philadelphia area, including the Hunting Park branch.[4] The contract required Merit to "[p]rovide all necessary labor, equipment, materials, supplies and supervision to provide snow removal services."[5] These services included plowing and removing snow and ice from, and applying salt to, the sidewalks, entrances, exits, driveways, maneuvering areas, all parking spaces, including the employee parking lot,

---

[3] Am. Compl. ¶¶ 12-18.

[4] *See* Snow Removal Contract (Doc. No. 17-5) generally and at ECF 1, 8, 51-52, 57.

[5] *See* Snow Removal Service Statement of Work Seasonal Rate Contracts ("Statement of Work") (Doc. No. 17-5 at ECF 27-29) at 1 ¶ 1. The Statement of Work is also attached as Ex. 3 to the Federal Defendants' motion to dismiss (Doc. No. 17-3). We refer to the Snow Removal Contract (Doc. No. 17-5) and the Statement of Work (Doc. No. 17-3) together as the "contract."

2

and dock areas.[6] The contract required Merit to remove snow and ice without notice or request from the Postal Service. Specifically, it stated that the contract was a "ZERO TOLERANCE CONTRACT[]," requiring the contractor to "commence the snow removal and salting operations without further notification."[7] Additionally, Merit was required, without instruction from the Postal Service, to return the same day to perform additional snow removal if snowfall continued after Merit had completed its initial snow removal duties and the new accumulation reached two inches. Merit was also required to return the same day after Postal Service vehicles and equipment had been moved to complete snow removal in areas it could not reach earlier.[8]

Merit was expected to provide these services even during hours when the Postal Service employees were not present.[9] Other obligations of the contractor included compliance with all applicable federal, state and local regulations governing work-place safety, including Occupational Safety and Health Administration ("OSHA") standards, and taking "all other proper precautions to protect the safety and health of the [contractor's] employees, Postal Service employees, and the public."[10] When "coordinating its performance time," Merit was required to take into account the operational hours of the post office and perform its snow removal activities "during hours that would not hinder the [facility's] operations."[11] When removing snow during post office business hours, Merit

---

[6] Statement of Work at 1 ¶¶ 1, 4.

[7] *Id.* at 1 ¶ 5.

[8] *Id.* at 1 ¶ 6.

[9] *Id.* at 3 ¶ 6.

[10] Snow Removal Contract (Doc. No. 17-5) at ECF 15.

[11] Statement of Work at 2 ¶ 5.

3

had to comply with the rules and regulations governing the post office's operations and "in a manner to keep any interference to a minimum."[12] Merit was also required to maintain insurance that was acceptable to the Postal Service, including worker's compensation insurance for its employees and general public liability insurance.[13]

The contract also provided that the Postal Service could adjust the level and schedule of services. For example, the Postal Service "reserve[d] the right to alter the order and schedule" of Merit's snow and ice removal services "should the need arise."[14] It could request Merit to provide salting even if the snowfall was less than two inches. When weather conditions endangered the safety of Postal Service employees or customers, the Postal Service could instruct Merit to respond within one hour.[15]

In their motion to dismiss the amended complaint for lack of subject matter jurisdiction, the federal defendants, citing Merit's broad responsibilities for snow and ice removal at the post office, assert Merit was an independent contractor, not an employee, of the Postal Service. They argue that under the independent contractor exception to the FTCA, the United States cannot be held liable for the negligence of its independent contractor or its employees. Anderson counters that the independent contractor exception does not apply because the Postal Service had pervasive, day-to-day supervision and control over Merit's performance of its duties under the contract, making Merit its employee.

---

[12] *Id.* at 2 ¶ 4.

[13] *Id.* at 2 ¶ 6; Snow Removal Contract at ECF 23-24.

[14] Statement of Work at 1 ¶ 4.

[15] *Id.* at 1 ¶¶ 4, 5.

## Standard of Review

The standard of review of a motion to dismiss made pursuant to Rule 12(b)(1) depends on whether the motion is a facial or factual attack on subject matter jurisdiction. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A facial challenge asserts an insufficiency on the face of the complaint. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A factual attack contends that the facts of the case do not support jurisdiction. *Constitution Party of Pa.*, 757 F.3d at 358. In a factual challenge, which we have here, the defendant disputes the allegations on which jurisdiction depends. Unlike in considering a facial challenge, the court must weigh the evidence and evaluate the merits of the jurisdictional claim. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). No presumptive truthfulness attaches to the plaintiff's allegations. *Id.* In considering a factual challenge, a district court may consider evidence outside the pleadings in order to determine whether jurisdiction exists. *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008); *Gould Elecs. Inc.*, 220 F.3d 169, 176 (3d Cir. 2000) (citation omitted). Additionally, the burden of proving that there is subject matter jurisdiction is on the plaintiff, "the party asserting its existence." *Lincoln Benefit Life Co.*, 800 F.3d at 105; *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 (3d Cir. 2013).

It is appropriate to decide a factual challenge to subject matter jurisdiction under Rule 12(b)(1) based on an exception in the FTCA. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997) (citing *Mortensen*, 549 F.2d at 891–92) (addressing a 12(b)(1) motion to dismiss based on the FTCA's "discretionary function" exception); *CNA*, 535 F.3d at 140

(addressing a 12(b)(1) motion to dismiss based on the FTCA's "scope of employment" requirement).

**Discussion**

The FTCA operates as a limited waiver of sovereign immunity, making the federal government liable for personal injury caused by the negligence of its employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1); *United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA defines "employee[s] of the government" as "officers or employees of any federal agency," and the statutory definition of "federal agency" specifically excludes "any contractor with the United States." 28 U.S.C. § 2671;[16] *Orleans*, 425 U.S. at 813-14; *Norman v. United States*, 111 F.3d 356, 357 (3d Cir. 1997). Thus, under the "independent contractor" exception, the government retains its sovereign immunity and cannot be held liable for the negligence of its independent contractors or their employees.

To determine whether the independent contractor exception applies, the "critical factor" is whether the government has the power "to control the detailed physical performance of the contractor." *Norman*, 111 F.3d at 357 (quoting *Orleans*, 425 U.S. at 814). Another significant factor is whether the government supervised the contractor's day-to-day operations. *Orleans*, 425 U.S. at 815. The mere ability to direct the contractor or the potential to exercise control in certain circumstances does not "convert a contractor" into a federal employee and circumvent the independent contractor exception. *Gibson v. United States*, 567 F.2d 1237, 1242 (3d Cir. 1977) (citing *Orleans*, 425 U.S. at

---

[16] 28 U.S.C. § 2671 defines the term "federal agency" to include "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, *but does not include any contractor with the United States.*" 28 U.S.C. § 2671 (emphasis added).

6

815); *Norman*, 111 F.3d at 357–58 (holding that United States could not be held liable for contractor that had "broad responsibilities for daily maintenance" under the independent contractor exception); *Orleans*, 425 U.S. at 817-18 (finding that federal contractor's compliance with extensive federal regulations, including employment and accounting policies and procedures, did not amount to giving the government power to supervise the contractor's daily operations). Hence, the question is what power did the government have to exercise control over the actual performance of the work.

To determine whether the government exercised day-to-day supervision over the work of the contractor, we start with the contract. The contract need not contain specific language or "magic words," such as "an explicit statement that the government would never exercise supervision over the contractor employees" or a statement "holding only the contractor liable for the acts and omissions of its employees." Rather, different factors may define the employment relationship, including terms that were omitted or were included in the contract. *See, e.g., Courts v. United States*, CIV A. No. 15-7303, 2016 WL 4521687, at *3 (D.N.J. Aug. 29, 2016) ("A contract between the government and a contractor need not expressly state that the government will refrain from exercising supervision for an independent contractor relationship to exist."); *accord*, *Pace v. United States*, Civ. A. No. 07-3882, 2008 WL 4559598, at *3 (D.N.J. Oct. 9, 2008) ("Many factors may be considered by the Court in defining the employment relationship.").

Here, the contract between the Postal Service and Merit shows that Merit had broad responsibilities for snow removal at the Hunting Park post office. Its activities were not subject to any day-to-day management, supervision or control by postal employees. Merit provided all labor, equipment and materials to provide snow removal services, which

included plowing and removing snow and ice from, and applying salt to the sidewalks, entrances, exits, driveways, maneuvering areas and the parking lots for customers and employees. It was required to remove snow without notice or request from the Postal Service, including returning the same day to repeat snow removal services when snow accumulated two more inches.

Merit had sole supervision of its employees. The Postal Service did not have the power to "control the detailed physical performance" of Merit's employees. The Postal Service had the limited ability to adjust the level and schedule of Merit's services. It could "alter the order and schedule" of Merit's snow and ice removal services, request salting even if the snowfall was less than two inches, or request additional snow and ice removal within an hour if dangerous weather conditions arose. Nothing the Postal Service could do under the contract displaced Merit's responsibility to provide snow removal services without notice or request from the Postal Service. Thus, Merit, not the Postal Service, was delegated broad responsibility to manage, supervise and control snow and ice removal at the Hunting Park post office.

Anderson characterizes provisions in the contract enabling the Postal Service to adjust the level and schedule of Merit's services, and requiring Merit to maintain insurance and "coordinate [its] performance time" and comply with rules and regulations governing the operations of the post office so as to interfere minimally with the facility's operations as creating "stringent notification requirements" between the parties and requiring Merit to maintain "extensive communication with postal service representatives."[17] He argues that these provisions demonstrate the Postal Service had "extensive," "pervasive" and

---

[17] Pls.' Br. (Doc. No. 19) at ECF 8-9.

"day-to-day control" over Merit's performance of the contract.[18] He also argues that the absence of precise language in the contract barring the Postal Service from supervising Merit's employees and assigning liability to Merit for the acts or omissions of its employees precludes application of the independent contractor exception.[19]

Contrary to Anderson's characterization of the contract provisions, the contract does not grant the Postal Service day-to-day control over Merit's physical performance of the contract. It places responsibility for snow and ice removal, including supervisory duties, upon Merit; and it requires Merit to perform these services without notification. A provision expressly prohibiting the Postal Service from supervising Merit's employees is not necessary because the contract expressly places supervisory control on Merit. The Postal Service's reserving the ability to request additional snow removal services did not amount to "broad, supervisory control, or even the potential to exercise detailed control" that would take Merit outside the independent contractor exception. *See Gibson*, 567 F.2d at 1242 (citation omitted). Nor does the fact that Merit had to comply with Postal Service regulations to keep interference with the facility's operations to a minimum mean that it had to communicate extensively with postal employees. When "coordinating its performance time," Merit was simply required to take into account the operational hours of the post office and perform its snow removal activities during hours that would not interfere with the post office's business.

In the amended complaint, Anderson reinforces Merit's status as an independent contractor. In paragraph nine, he alleges that the Postal Service "owned, operated,

---

[18] *Id.* at 9.

[19] *Id.*

9

leased, maintained, and/or controlled" the Hunting Park post office property.[20] Significantly, he did not allege that it controlled or supervised snow removal from the property. Instead, in paragraph ten, he averred that Merit was "responsible for the snow removal and maintenance of the" Hunting Park post office property.[21] Thus, by his own allegations, Anderson casts Merit as an independent contractor.

## Conclusion

Because it exercised broad responsibilities for snow and ice removal at the Postal Service property and exercised day-to-day supervision and control over carrying out those responsibilities, Merit is an independent contractor. Therefore, the independent contractor exception to the FTCA deprives us of subject matter jurisdiction over the federal defendants.

/s/ TIMOTHY J. SAVAGE J.

---

[20] Am. Compl. ¶ 9.

[21] *Id.* ¶ 10.